## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATHERINE LEE FREEMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> (1) STANLEY GLANZ, in his ) <br> individual capacity; ) <br> (2) VIC REGALADO, TULSA ) <br> COUNTY SHERIFF, in his official ) <br> capacity; ) <br> (3) ARMOR CORRECTIONAL ) <br> HEALTH SERVICES, INC., ) <br> a foreign corporation; and ) <br> (4) AMERICAN MEDICAL ) <br> RESPONSE AMBULANCE ) <br> SERVICE, INC., a foreign corporation, ) <br> ) <br> Defendants. ) | Case No. 16-CV-534-JHP-PJC |

## OPINION AND ORDER

Before the Court is Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss Plaintiff's First Amended Petition (Doc. No. 11). After consideration of the briefs, and for the reasons stated below, Defendant's Motion to Dismiss is **DENIED**.

## BACKGROUND

Plaintiff Catherine Lee Freeman ("Plaintiff") filed this action to recover against the defendants for alleged violations of the Eighth and/or Fourteenth Amendments to the United States Constitution. Plaintiff also brings state law tort claims for negligence, a claim pursuant to the Oklahoma Constitution, and a claim for punitive damages. The First Amended Petition names as defendants (1) Stanley Glanz, in his individual capacity, (2) Tulsa County Sheriff Vic Regalado, in his official capacity, (3) Armor Correctional Health Services, Inc., ("Armor") and (4) American Medical Response Ambulance Service, Inc. (Doc. No. 3-3).

1

According to the First Amended Petition, on September 15, 2014, Plaintiff was sentenced in Tulsa County District Court to a three-year prison term for Driving Under the Influence, and she was taken into custody on that day. (Doc. No. 3-3, ¶¶ 21-22). Plaintiff was transported to the Tulsa County Jail to await transfer to the Oklahoma Department of Corrections. (*Id.* ¶ 22). When Plaintiff was taken into custody, she was taking prescribed Lexapro and Valium for anxiety and depression, and Percocet and Extended Release Morphine for pain. (*Id.* ¶ 23). However, Plaintiff did not have these prescription medications with her when she was taken into custody, and she was not allowed to have her prescription medications brought to her. (*Id.* ¶ 24).

Upon arrival at the Tulsa County Jail, Plaintiff told the jail and medical personnel that she was on these medications and needed to keep taking them; otherwise she risked withdrawal complications, including seizures and suicidal thoughts. (*Id.* ¶¶ 25-29). Plaintiff repeatedly notified the Tulsa County Jail through the kiosk system of her needs regarding her medications. (*Id.* ¶ 27). Because of the risk to Plaintiff of suicidal thoughts from medication withdrawal, Plaintiff was placed on "suicide watch" for a period of time. (*Id.* ¶¶ 30-32). However, jail and medical staff otherwise "failed and/or refused to address Plaintiff's medical needs regarding her withdrawal symptoms." (*Id.* ¶ 33).

In late September and early October, Plaintiff began having seizures, which "[j]ail and/or medical personnel did not properly and effectively medically treat." (*Id.* ¶ 34). Plaintiff's seizures increased in length, and Plaintiff was taken to the medical unit, although the jail and/or medical personnel still did not properly and effectively treat Plaintiff for her seizures. (*Id.* ¶ 35). On October 4, 2014, Plaintiff had a seizure that lasted longer than ten minutes. (*Id.* ¶ 36). At that point, jail and/or medical personnel called for an ambulance to take Plaintiff to the hospital. (*Id.*). By the time the ambulance arrived, Plaintiff was already turning blue from lack of oxygen

and in dire need of immediate care. (*Id.* ¶ 37). As a result of the ambulance personnel's alleged negligence, Plaintiff suffered further serious injury. (*Id.* ¶¶ 39-49). Plaintiff had to be placed on a ventilator, had emergency surgery to repair a torn esophagus, needed a feeding tube, and suffered an anoxic brain injury. (*Id.* ¶¶ 44-49). When Plaintiff was returned to the Tulsa County Jail on a feeding tube, Armor's employees and agents were not equipped to handle her needs, and she was further harmed from inadequate medical care at their hands. (*Id.* ¶¶ 52-53).

Plaintiff asserts a total of nine causes of action against four defendants. Relevant to Armor's Motion to Dismiss, Plaintiff seeks: (1) relief under 42 U.S.C. § 1983 against Armor for cruel and unusual punishment in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution, by being deliberately indifferent to Plaintiff's serious medical needs, health, and safety (Count VII); (2) recovery against Armor for negligence in failing to provide adequate or timely evaluation and treatment of Plaintiff and in failing to reasonably or timely treat Plaintiff's serious medical condition (Count II); and (3) recovery against Armor for negligent hiring, training, and supervision of its agents and employees (Count V) (*Id.* ¶¶ 85-93, 108-113, 136-145). Plaintiff seeks damages for her injuries and pain and suffering, as well as punitive damages against Armor.

Defendant Armor has now filed a Motion to Dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which any relief can be granted as a matter of law.

## DISCUSSION

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has stated that "plausibility" in this context refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

## I. 42 U.S.C. § 1983 Claim Against Armor

### A. Constitutional Violation – Deliberate Indifference

First, Armor contends that Plaintiff fails to plead sufficient facts to show that Armor was deliberately indifferent to her serious medical needs in denying her adequate medical care while she was incarcerated. Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). Under the Eighth Amendment, prisoners have a constitutional right to medical care, which is violated when doctors or prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Tenth Circuit recognizes two types of conduct amounting to deliberate indifference in the context of prisoner medical care. "First, a medical professional may fail to treat a serious medical condition properly." *Sealock v.*

4

*Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). When this type of conduct is alleged, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Id.* (citing *Estelle*, 429 U.S. at 105-06). Second, prison officials may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). A prison medical professional, such as a booking nurse, who serves solely "as a gatekeeper for other medical personnel capable of treating the condition" may be liable under this standard if he or she "delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Id.*

Deliberate indifference "involves both an objective and a subjective component." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Sealock*, 218 F.3d at 1209). To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999)). The question raised by the objective prong "is whether the alleged harm . . . is sufficiently serious . . . , rather than whether the symptoms displayed to the prison employee are sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

To satisfy the subjective component, there must be evidence that "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

[s]he must also draw the inference.'" *Mata*, 427 F.3d at 751 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). The subjective component may be satisfied if the jury can "infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 842). Moreover, the subjective component may be satisfied if the defendant's "delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755. However, the "'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'" *Self*, 439 F.3d at 1233 (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

Here, the Court concludes that Plaintiff has plausibly alleged a claim under § 1983 based on deliberate indifference to her medical needs. Plaintiff alleges she was prescribed and taking Lexapro, Valium, Percocet, and Extended Release Morphine at the time she was booked into the Tulsa County Jail. (Doc. No. 3-3, ¶ 23). She alleges she did not have any of her prescription medication with her when she was booked into the jail, and jail personnel would not allow her medication to be brought to her. (*Id.* ¶ 24). Plaintiff alleges she advised jail and medical personnel repeatedly that she needed to continue taking her medications, or she would risk withdrawal complications including seizures and suicidal thoughts. (*Id.* ¶¶ 25-29). She alleges the jail and medical personnel failed or refused to address her serious medical needs regarding the withdrawal symptoms. (*Id.* ¶ 33). Plaintiff alleges she then began to have repeated seizure episodes, which jail and medical staff did not properly and effectively treat, even at the medical unit, which ultimately led to a long seizure on October 4, 2014. (*Id.* ¶¶ 34-36).

6

These allegations, taken as true for purposes of this motion, state a claim for a constitutional violation. Plaintiff has plausibly alleged she suffered a serious medical need in the form of medication withdrawal symptoms, specifically a seizure risk, which jail and medical personnel knew of but failed to address. Plaintiff alleges that she repeatedly advised jail and medical personnel of the risk for seizure if she did not have her medication, yet those personnel failed and refused to address the serious medical need. Shortly thereafter, Plaintiff suffered repeated seizure episodes, which were not properly treated until she suffered a ten-minute seizure that required emergency medical care. Based on these allegations, a reasonable inference can be made that Armor personnel had actual knowledge of Plaintiff's serious condition. Armor's alleged delay or failure in alleviating Plaintiff's known and serious withdrawal symptoms suffices to state a claim for deliberate indifference.

Armor attempts to liken Plaintiff's allegations to those alleged in *Woodside-Fisher v. Pulley*, 2015 WL 631106 (W.D. Okla. Feb. 12, 2015). In *Pulley*, the plaintiff alleged he asked a prison official if his meal had included pork, because he felt abdominal pain, numbness, and nausea after eating. The official advised him his tray included no pork and denied the request for medical treatment. For three days, the plaintiff repeatedly requested medical attention for his abdominal pain, swelling, and nausea but was denied. The plaintiff in *Pulley* also alleged the jail medical professional denied his request for medicine for his post-traumatic stress disorder for several months. The court ruled the plaintiff failed to allege conduct that stated a plausible claim for unconstitutional denial of medical care. *Id.* at *3. The *Pulley* court noted that the plaintiff had not identified any jail official to whom he had made his requests for medical attention, that the plaintiff failed to allege any particular officer had ignored his symptoms, and that the plaintiff

did not allege facts demonstrating his symptoms caused outward signs that would objectively indicate to the officer the presence of a substantial risk of serious harm. *Id.*

The Court finds the analogy to *Pulley* to be inapt. In *Pulley*, the plaintiff believed he was suffering from pain because he had eaten pork, and the jail officer confirmed he had not eaten pork. Moreover, Plaintiff's symptoms resolved within a matter of days. *Id.* Here, by contrast, Plaintiff alleges she warned jail and medical personnel of a serious risk of seizures if she was required to stop her medications suddenly. She alleges that, despite her repeated warnings, jail and medical personnel failed and refused to address Plaintiff's serious medical needs. (Doc. No. 3-3, ¶ 33). Shortly thereafter, Plaintiff did suffer repeated seizure episodes, which ultimately resulted in ambulance transport, hospitalization, and long-term substantial harm. (Doc. No. 3-3, ¶¶ 34-56). Although Plaintiff does not name any individual jail or medical personnel who refused her treatment, she names Armor as the medical provider at the Tulsa County jail during her time of incarceration, she indicates she had to use a kiosk system to notify jail and medical staff about her seizure risk, and she alleges Armor failed to reasonably or timely treat Plaintiff's serious medical condition, which led to respiratory failure. (Doc. No. 3-3, ¶¶ 4, 27, 90-91). It may be impossible without discovery to know which of Armor's employees was charged with responding to the kiosk system requests. Plaintiff has described the alleged conduct of Armor with sufficient specificity to give Armor notice of the claims against it. Plaintiff's allegations therefore meet the standard for raising an Eighth Amendment claim.

Finally, Armor argues Plaintiff's constitutional claim fails, because Armor placed her on suicide watch, and because Plaintiff alleges jail and medical personnel "did not properly and effectively medically treat Plaintiff" for her seizures once they began, both of which indicate that jail personnel did not ignore her medical condition. However, as discussed above, the deliberate

8

indifference standard may be satisfied by a delay in treatment, which Plaintiff alleges here. She alleges jail and medical personnel "failed and/or refused" to address the known seizure risk caused by withdrawal, until she "began having repeated seizure episodes." (Doc. No. 3-3, ¶¶ 33-34). Plaintiff's allegations of delay in medical care regarding her seizure risk, followed by lack of proper and effective treatment of her seizures and ultimate substantial harm, are sufficient to raise an Eighth Amendment claim. *See Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir.2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). Plaintiff's allegations of misconduct rise above the level of medical malpractice or mere negligence. Moreover, Armor's alleged decision to move Plaintiff to a special cell for "suicide watch" after she warned them of a risk of suicidal thoughts (Doc. No. 3-3, ¶ 30) does not nullify the alleged denial of medical care with regard to her risk of seizures.

### B. Acting Under Color of State Law

To state a claim under § 1983, a plaintiff must allege she was deprived of her federal rights "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). When a corporate defendant acts "for the government in carrying out a government program in accordance with government regulations, [it is] a person 'acting under color of state law.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003). In the prison context, a private physician treating prisoners under contract with state prison authorities acts under color of state law for Eighth Amendment purposes. *West*, 487 U.S. at 57. *See also Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985) (finding medical services corporation acting on behalf of county to be state actor for purposes of § 1983).

Armor asserts Plaintiff provides only conclusory allegations that Armor was acting under color of state law, which is fatal to her § 1983 claim. The Court disagrees. Here, Plaintiff has plausibly averred conduct by Armor that is fairly attributable to the State for purposes of § 1983. *See Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1338 (N.D. Okla. 2014) (finding plaintiff plausibly alleged that private healthcare provider under contract with Tulsa County Jail to provide medical care to prisoners was acting under color of state law) (citing *West*, 487 U.S. at 54). Plaintiff alleges that Armor is a "person" for § 1983 purposes, that Armor was "acting under color of state law" at the relevant times, and that Armor "has been endowed by Tulsa County/BCCO with powers or functions governmental in nature, such that [it] became an instrumentality of the State and subject to its constitutional limitations." (Doc. No. 3-3, ¶¶ 4, 137-139). Plaintiff further alleges Armor was responsible for providing medical services at the Tulsa County Jail and "was additionally responsible, in part, for creating and implementing policies, practices, and protocols that govern the provision of medical and mental health care to inmates at the Tulsa County Jail, and for training and supervising its employees." (*Id.* ¶ 4). These allegations suffice to plausibly allege that Armor was acting under color of state law in providing medical care to Tulsa County Jail inmates, including Plaintiff. *See Revilla*, 8 F. Supp. 3d at 1338-39.

### C. Municipal Liability

Plaintiff brings her constitutional claim against Armor under a "municipal liability" theory of recovery. In this regard, Plaintiff alleges Armor implemented or maintained policies, practices, or customs at the Tulsa County Jail that deprived her of her constitutional rights. (*See* Doc. No. 3-3, ¶¶ 58-75). Plaintiff alleges Armor's contractual relationship with Sheriff Glanz and the Tulsa County Sheriff's Office "provides financial disincentives [for] the transfer of

inmates in need of care from an outside facility" and that Armor's medical staff remains "undertrained and inadequately supervised." (*Id.* ¶¶ 74-75, 140).

Armor argues Plaintiff's allegations with respect to municipal liability fail, because Armor does not have final decision-making authority for the Tulsa County Jail. To state a claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)). As explained above in Part I.A, Plaintiff has plausibly alleged the first element of a constitutional violation.

With respect to the second element, a plaintiff must show "that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation omitted). A policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers." *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Starrett v. Wadley,* 876 F.2d 808, 818 (10th Cir.1989)) (quotation and alteration marks omitted). A custom must be a practice that is "'persistent and widespread.'" *Id.* (quoting *Starrett*, 876 F.2d at 818).

Armor argues the First Amended Petition insufficiently alleges municipal liability, because Plaintiff fails to allege Armor has final policymaking authority. Armor cites to the United States Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), in which the Court held that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." However, as Plaintiff points out, Armor's citation is incomplete insofar as it defines the limits of

11

municipal liability. Municipal liability may be established when the unconstitutional actions of a municipal employee were either (1) "representative of an official policy or custom of the municipal institution" or (2) "carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). *See also Pembaur*, 475 U.S. at 483 n.10 (noting that, under *Monell*, a § 1983 plaintiff "may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to state 'custom or usage.'").

Here, Plaintiff alleges that Armor, which performed a function traditionally performed by the state, maintained policies of providing inadequate medical and mental health care to inmates at the Tulsa County Jail for financial reasons, which represented longstanding policy, custom, and practice at the Tulsa County Jail. (Doc. No. 3-3, ¶¶ 4, 73-75, 137-145). Plaintiff has plausibly alleged that Armor's unconstitutional implementation of "edicts or acts" with respect to medical care at the Tulsa County Jail "may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Plaintiff alleges a direct causal link between Armor's longstanding policy of refusing to send inmates with emergent needs to the hospital for purely financial reasons and the violation of Plaintiff's Eighth Amendment rights. (*See* Doc. No. 3-3, ¶¶ 73-75, ¶¶ 139-145). Such allegations are sufficient to state a claim for municipal liability.

## II. Immunity Under the Oklahoma Governmental Tort Claims Act

Next, Armor asserts Plaintiff's negligence claims pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 Okl. St. §§ 151 *et seq.*, must be dismissed as a matter of law. Armor contends that, under the OGTCA, it is considered an "employee" of the state and therefore immune from liability for claims of negligence.

The OGTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. 51 Okl. St. § 152.1(A). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the OGTCA. 51 Okl. St. § 152.1(B). As Armor correctly points out, the OGTCA did not waive immunity of state employees. In fact, the OGTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." 51 Okl. St. § 163(C). For purposes of the OGTCA, "employees" of the state include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." 51 Okl. St. § 152(7)(b)(7). Armor asserts it falls within this definition of "licensed medical professionals" and is therefore immune from tort liability.

The Court disagrees with Armor's position. Here, Plaintiff alleges Armor was negligent in "failing to provide competent medical treatment as required by applicable standards of care, custom and law" while Plaintiff was incarcerated at the Tulsa County Jail. (Doc. No. 3-3, ¶¶ 87-88). Plaintiff further alleges Armor "is a corporation doing business in Tulsa County, Oklahoma." (*Id.* ¶ 4). Armor does not explain how a corporation may be covered under the OGTCA as a "licensed medical professional," but it defies common sense to include a corporation within that definition, particularly at this early stage of litigation. Although the phrase "licensed medical professionals" is not defined in the OGTCA, the Oklahoma Legislature elsewhere has defined the phrase "licensed health care professional" as "a physician and surgeon, podiatrist, osteopath, osteopathic physician and surgeon, physician assistant, nurse, dentist, or pharmacist." 63 Okl. St. § 3141.2(1). Each of these "licensed health care professionals" is an individual actor, not a corporation or other entity.

In its Reply, Armor argues OGTCA immunity should apply to it, because Plaintiff must have been treated at the jail by individual licensed medical providers who provided care pursuant to contract with the county. Armor fails, however, to address its own immunity as a corporation under the OGTCA or offer any support for its assertion that the OGTCA "is clearly meant to include a correctional healthcare provider such as Armor . . . within its ambit of immunity." (Doc. No. 26, at 9). In the absence of any legal authority to the contrary, the Court will not read the phrase "licensed medical professionals" to cover corporations such as Armor. *See Revilla*, 8 F. Supp. 3d at 1344-45 (declining to apply § 152(7)(b)(7) immunity to corporation providing healthcare services to county jail inmates at motion to dismiss phase). At minimum, there is an insufficient factual record at this stage to dismiss Armor as an "employee" as a matter of law under the OGTCA.

## III.   Punitive Damages Under § 1983

Next, Armor contends it cannot be held liable for punitive damages under a § 1983 claim, because punitive damages are not available against a municipality on a claim brought under § 1983. While Plaintiff concedes that *municipalities* are not liable for punitive damages under § 1983, Plaintiff argues Armor may be subject to punitive damages because it is a private *corporation*.

In *City of Newport v. Fact Concerts, Inc.*, 433 U.S. 247, 271 (1981), the Supreme Court found the unique qualities of a municipality meant municipalities are immune from punitive damages under § 1983. *See Butcher v. City of McAlester*, 956 F.2d 973, 976 n.1 (10th Cir. 1992). However, Plaintiff alleges, and Armor does not contest, that Armor is a corporation, not a municipality. (Doc. No. 3-3, ¶ 4). Armor cites no authority in support of its argument that as a corporation, it should not be subject to punitive damages. On the other hand, Plaintiff cites

several instances in which courts have found private corporations could be subject to punitive damages under § 1983. *Revilla*, 8 F. Supp. 3d at 1343 (concluding it was "unable to apply the punitive damages immunity afforded municipalities under the *City of Newport* case to CHC, which is a private corporation.") (collecting cases); *Segler v. Clark Cnty.*, 142 F. Supp. 2d 1264, 1269 (D. Nev. 2001) ("EMSA is a private corporation. . . . As such, EMSA does not fit the requirements for a municipality set out by the United States Supreme Court in the *City of Newport* case" and may be subject to punitive damages under § 1983); *Lawes v. Las Vegas Metro. Police Dep't*, 2013 WL 3433150, at *2 (D. Nev. July 8, 2013) ("Private entities that provide medical care in a government jail, however, are not treated as municipalities for punitive damages under Section 1983."); *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) (upholding punitive damages award under § 1983 against private contractor hired by county jail to provide medical services at jail). Armor fails to address any of this persuasive authority in its Reply brief. Therefore, at this stage of the case, no basis exists to dismiss Plaintiff's claim for punitive damages pursuant to § 1983.

**IV. Statute of Limitations – State Negligence Claims**

Finally, Armor argues Plaintiff's negligence claims against it are barred by the applicable statute of limitations. In the First Amended Petition, Plaintiff alleges she was booked into the Tulsa County Jail on September 15, 2014. (Doc. No. 3-3, ¶¶ 21-22). She alleges that, as a result of Armor's negligence she suffered a seizure and respiratory failure on October 4, 2014. (*Id.* ¶¶ 36-37, 85-93). Plaintiff filed her original petition on July 1, 2016, (Doc. No. 3-1). Armor asserts that Plaintiff's negligence claim is subject to a one-year statute of limitations for inmates under 12 Okl. St. § 95(A)(11), which would have made the petition due on or about October 4, 2015.

Because Plaintiff waited longer than one year to file her petition, Armor argues that Plaintiff's negligence claims were untimely filed.

12 Okl. St. § 95(A)(11) provides in relevant part:

All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:

(a) the State of Oklahoma,
(b) a contractor of the State of Oklahoma, or
(c) a political subdivision of the State of Oklahoma,

to include but not be limited to . . . claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued.

Section 95(A)(11) may apply to tort claims of negligence that occurred while the plaintiff was an inmate in the custody and control of a county jail. *See Allen v. Yates*, 2008 WL 5244871, at *1 (E.D. Okla. Dec. 15, 2008) (applying § 95(A)(11) to bar state claims for negligence and *respondeat superior* brought against county detention officer, jail administrator, and county sheriff, where plaintiff alleged he was physically attacked while detained at county jail).

Plaintiff contends that Armor cites the incorrect statute of limitations as applicable to her state negligence claims. Rather, Plaintiff argues her negligence claims are subject to the more specific statute of limitations under the OGTCA, found at 51 Okl. St. §§ 156-157. Plaintiff further argues the Oklahoma Supreme Court's decision in *Brown v. Creek County*, 164 P.3d 1073, 1076 (Okla. 2007) is controlling. In *Brown,* the Oklahoma Supreme Court held the "[O]GTCA's statute-of-limitations provisions, as distinguished from those contained in the generic section on civil procedure" of 12 Okl. St. § 95, governed an inmate's OGTCA suit against a county, doctor, and nurse arising from his detention in the county jail. *Brown,* 164 P.3d at 1076. It is undisputed that, under the OGTCA's provisions, Plaintiff's state law claims would be timely.

16

The statute of limitations question hinges on whether the OGTCA governs Plaintiff's negligence claims against Armor. Based on the parties' filings, however, it is unclear to the Court whether the OGTCA governs these claims. According to the First Amended Petition, Plaintiff's negligence claims against Armor are brought pursuant to common law, not the OGTCA. (*See* Doc. No. 3-3, Counts II, V). Moreover, in in Part II.C of her Response brief, Plaintiff appears to argue that the OGTCA does not apply to Armor. (*See* Doc. No. 22, at 12-14). However, for statute of limitations purposes, Plaintiff asserts the OGTCA does apply. (*Id.* at 16-17).

Armor's filings are equally inconsistent: In Part B of its Motion to Dismiss brief, Armor argues it enjoys immunity under the OGTCA as an "employee" (Doc. No. 11, at 13-14). In Part D of the same brief, Armor asserts Plaintiff's negligence claims are time-barred under the generic statute of limitations (*id.* at 14-16). In its Reply brief, Armor does not respond to Plaintiff's statute-of-limitations argument regarding the applicability of *Brown* or the OGTCA to the timeliness of Plaintiff's negligence claims against it.

As discussed above in Part II, there remains a question as to whether Armor is covered under the OGTCA. Further, the Court is not convinced that the authority cited by either side is dispositive of the statute-of-limitations question. In the absence of a clear answer as to whether the OGTCA applies to Plaintiff's tort claims against Armor, the Court is not prepared to dismiss Plaintiff's negligence claims against Armor as untimely. Accordingly, the Court declines to determine, as a matter of law at the pleading stage, that Plaintiff's negligence claims are time-barred.

## CONCLUSION

For the reasons detailed above, Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Doc. No. 11) is **DENIED.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma